Singleton, Judge:
This claim was filed May 17,1966, with the Attorney General. The evidence of claimant and respondent was taken and the record made before the Claims Examiner for that office at a hearing held November 15, 1966. No opinion was rendered by the Attorney General and the entire record and case file was *11 delivered to this Court after July 1, 1967, for consideration and decision.
The record discloses that claimant was on January 23, 1959, awarded a contract by the State Road Commission for construction of Mud River Bridge Number 2104 on Interstate 64 in Cabell County, known as Project No. 1-64-1 (11)18, for the sum of $329,660.93, to be completed in 225 working days. The work was completed and the bridge opened to traffic in the fall of 1961, although the State Road Commission had disclosed that the bridge rocker on Pier Two was in tipped position. Deterioration or “spalling” of portions of the bridge deck began to appear in the spring of 1962 and this condition accelerated during subsequent months, use of the bridge by traffic continuing. On August 15, 1961, the State Road Commission by letter directed the claimant to reset the Pier Two rocker in question in accordance with plans prepared by the State Road Commission and advised Claimant that the State Road Commission would pay for this work on a “force account” basis. This same letter directed claimant to remove certain sections of the bridge deck affected by the “spalling” and replace same, this work to be done at claimants expense. Claimant protested replacement of portions of the deck at its expense and did not proceed until 1963, when the State Road Commission threatened to invoke the forfeiture provisions of the standard specifications. Claimant then advised the State Road Commission that it would proceed with the rocker correction and would also proceed with the bridge deck replacement, under protest, and file a claim for the replacement costs thereof in accordance with the specifications. At this same time, claimant requested that the State Road Commission join with it in obtaining the services of an independent consultant to evaluate the cause of the deck “spalling”. The State Road Commission did not agree, and claimant then advised it would obtain the services of such a consultant at its expense. Claimant was paid for its work in connection with the correction of the Prier Two rocker but not for replacement of the bridge deck, and this claim in the amount of $67,681.89 was filed.
It is claimant’s position that:
(1) The tilting of Pier Two resulting in the tipping of the rocker was not the result of faulty construction on its part, *12 but was due to a shift in the earth fill or to a design failure: and,
(2) That the “spalling” or deterioration of portions of the bridge deck was due primarily from tensile or lateral stresses exerted on the deck by the tilting of pier Two and the subsequent tipping and locking of the rocker, with the salting of the deck during the winters of 1961-62 and 1962-63 contributing to this deterioration.
Respondent contends that the spalling of the bridge deck resulted from poor workmanship and material in the batching, pouring and handling of the concrete.
The reports of both independent consultants were admitted into evidence, the report of Harry Balke, Consultant for the claimant, being marked Claimant’s Exhibit No. 1 and the report of C. H. Scholer, Consultant for respondent, being marked Claimant’s Exhibit No. 2. The Balke report places the cause for the spalling and deterioration of the bridge deck entirely upon the tilting of the piers, possibly contributed to by the “action of salt through two winters”. The report of Scholer, the consultant for the respondent, surmises that inadequate placing and finishing practices by the contractor may have contributed to the poor results secured, but stated that it “is very doubtful if there is sufficient evidence to hold the contractor responsible for the unsatisfactory results”. This Scholer report also raises the question as to the reasons for the additional three hours required to pour the Sequence 2 in the north span (the greatest portion of the bridge deck removed) as opposed to the pouring of the other sequences of the bridge deck. The record is silent as to the cause for this delay, and inasmuch as it is the contention of the State that such a delay was a contributing factor to the deterioration of the concrete, it is interesting to note that the engineer for the claimant was not cross examined or questioned at all concerning this issue so as to place any cause for the delay upon the contractor.
Claimant’s exhibits Nos. 4, 5 and 6 were the testing reports of the Materials and Testing Labratory of the State Road Commission approving the sand, gravel and cement used in the batching and mixing of the concrete placed by the contractor in the bridge deck. The record discloses that all of the deck *13 concrete was prepared from these materials and while both consultants raise the question as to the adequacy of the aggregate, it was a material approved by the State Road Commission and specifically approved for use in this project. The evidence further discloses that the bridge deck was poured over a period of a month and a "half and that only the sections in the vicinity of Pier Two, the tilted pier with the tipped rocker, deteriorated badly. There was no question, as is pointed out in the report of R. P. Davis, consulting bridge engineer, that an examina-was wrong with the concrete. These photographs were also adtion of the photographs taken of the deck concluded something mitted into evidence and made a part of the record by respondent.
After consideration of the record, the evidence and exhibits offered on behalf of the claimant, and the evidence and exhibits offered on behalf of the respondent, the Court is of the opinion that the claimant constructed the bridge and bridge deck in question in accordance with the plans and specifications, using the materials approved by the State Road Commission, and the mixing and supervision of the placement of said concrete being under the constant control and supervision of inspectors for the State Road Commission; and that other than conjecture that the claimant was guilty of faulty workmanship in the pouring of the deck in question, there is no evidence that the contractor was guilty of any negligence or poor workmanship contributing to the deterioration of the deck. While the Court is of the opinion that it is not incumbent upon the respondent to prove a defense to a claim by a preponderance of the evidence, there must be some evidence to sustain respondent’s position where the claimant has made a clear prima facia case for relief. The Court is therefore of the opinion that the claimant has proven by a preponderance of the evidence that a moral obligation on the part of the State of West Virginia exists and that this claim clearly is one that in equity and good conscience the State should discharge and pay. Inasmuch as the reasonableness of the amount requested by claimant for the work and labor performed and materials furnished in the placement of the bridge deck was not questioned by the State Road Commission, it is further the opinion of the Court that the claimant, Mountain State Construction Company, a West Virginia Corporation, should recover, and an award is made *14 to the claimant in the amount of $67,288.99, the original amount of the claim having been reduced by the Court to reflect the reduction of the Business and Occupation tax rate for contractors from 2.6% to 2%.